IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| HEATHER PAYNE, GERI MANN, and CYNTHIA ALBERTS, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | CASE NO. **00C 3292** <br> **JUDGE HOLDERMAN** |
| Plaintiffs, | ) ) | JUDGE |
| v. | ) ) | MAGISTRATE |
| TRANS UNION CORPORATION | ) ) ) | |
| | ) | **CLASS ACTION COMPLAINT** |
| Defendant. | ) | (Jury Demand Endorsed Hereon) |

**DOCKETED JUN 0 2 2000**

**MAGISTRATE JUDGE SCHENKIER**

### I. INTRODUCTION

1. This is a class action on behalf of all persons whose credit information was transferred by defendant Trans Union Corporation ("Trans Union") to target marketers in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq. ("FCRA" or the "Act").

2. Trans Union is a credit reporting agency ("CRA") that has collected financial data on more than 140 million American consumers. Congress enacted the FCRA not only to ensure the accuracy of the credit-related data collected by CRAs such as Trans Union, but also to protect consumers' entitlement to the privacy of such data. The Act prohibits CRAs from disclosing such data except in the narrow circumstances permitted by FCRA § 604. Despite this Congressional proscription, Trans Union sold confidential credit information about Plaintiffs and other Class members to "target marketers" — a circumstance that is not permitted by § 604. Trans Union did so intentionally and without the consent or even the knowledge of the Class members. While its competitors yielded to FCRA enforcement actions by the Federal Trade Commission ("FTC" or "the Commission"), Trans Union defied the FTC and willfully violated the Act, thereby reaping

CLE - 595553.3

substantial profits from an illegal business free from direct competition. On February 10, 2000, the FTC found that Trans Union's practices, including those described in this Complaint, violated the FCRA. *In the Matter of Trans Union Corporation*, Docket No. 9255 (Fed. Trade Comm. February 10, 2000).

3. Under the FCRA, each of the affected consumers is entitled to an award of statutory damages against Trans Union of at least $100 and as much as $1,000 per violation. On information and belief, there are tens of millions of consumers whose confidential credit information has been illegally sold by Trans Union, and many have been subjected to multiple violations.

4. As recently as May 2, 2000, Trans Union's net worth was publically reported as approximately $176,000,000. In light of the number of Class members, the number of violations, and the range of statutory damages for each violation, the amount in controversy clearly exceeds Trans Union's net worth, thus rendering class certification appropriate under the "limited fund" provisions Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure. *See* Paragraphs 12 through 18 *infra*. Class certification is also appropriate under Rules 23(b)(2) and (3) because Trans Union has acted on grounds generally applicable to the Class by selling consumer credit reports en masse and because common issues predominate over individual issues. *See* Paragraphs 12 through 20 *infra*.

## II. JURISDICTION

5. This Court has federal question jurisdiction pursuant to 28 U.S.C.§ 1331 and 15 U.S.C. § 1681(p).

6. FCRA § 618, codified at 15 U.S.C. § 1681(p), provides that "an action to enforce any liability created under this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy."

## III. VENUE

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

8. Trans Union is a Delaware corporation having its headquarters and primary place of business at 555 West Adams Street, Chicago, Illinois 60661. Trans Union is also a resident of, has an agent or agents in, and/or transacts its affairs in this District. Many of the damages, acts or omissions giving rise to the violations complained of occurred in this District.

9. Each of the named plaintiffs and many of the Class members reside in the district.

## IV. THE PARTIES

10. Plaintiffs Heather Payne, Geri Mann, and Cynthia Alberts ("Plaintiffs") are natural persons residing in this District who have had mortgages and credit cards ("trade credit lines") during the period in which Trans Union has sold the credit information of persons like Plaintiffs without their knowledge. On information and belief, Plaintiffs are among the persons whose credit information has been sold by Trans Union in violation of the FCRA.

11. Trans Union is a credit reporting agency headquartered in this District. Trans Union collects credit information regarding more than 140 million American consumers from numerous credit grantors and others, compiles that information into credit reports, and sells the reports nationwide.

## V. CLASS ACTION ALLEGATIONS

12. Pursuant to Rules 23(a), 23(b)(1)(A), 23(b)(1)(B), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action as a class action on behalf of themselves and all other members of a class defined as:

> All persons in the United States whose names were furnished by Trans Union to private third parties under circumstances other than those permitted by FCRA § 604(a)(3) since December 15, 1992.

13. The members of the Class are so numerous that joinder of all members is impractical. On information and belief, the Class includes tens of millions of persons who were identified in one or more lists furnished by Trans Union to target marketers whom Trans Union did not have reason to believe intended to use the information for "permissible purposes" as defined in FCRA § 604(a)(3).

14. There are questions of law and fact common to the Class, including, but not limited to:

- whether the lists of names sold by Trans Union to target marketers and other private third parties constituted "consumer reports" as defined by FCRA § 603(d);

- whether the target marketers and other private third parties to whom Trans Union sold such lists intended to use the information solely for purposes permitted by FCRA § 604(a)(3);

- whether Trans Union had reason to believe that the target marketers and other private third parties to whom Trans Union sold such lists intended to use the information solely for purposes permitted by FCRA § 604(a)(3);

- whether Trans Union in fact had actual knowledge that the recipients of the lists intended to use the information for purposes other than those permitted by FCRA § 604(a)(3);

- whether Trans Union actually designed its lists to be sold to target marketers and other private third parties who intended to use the information for purposes other than those permitted by FCRA § 604(a)(3);

- whether Trans Union wilfully violated FCRA § 604 and 607.

- whether Trans Union is liable to each Class member for statutory damages of not less than $100 and not more than $1000 for each such violation.

15. The claims of Plaintiffs are typical of the claims of the Class, and are not in conflict with the claims of other members of the Class.

16. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs' interests are not antagonistic to, but rather are coincident with, the interests

CLE - 595553.3

—4—

of other Class members. Plaintiffs will vigorously prosecute this action, and have retained counsel who are competent and experienced in class actions and other complex litigation, including consumer protection litigation. Plaintiffs' counsel have broad experience in handling litigation of this type and are fully qualified to prosecute the claims of the Class.

17. Class certification is appropriate under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure, in that the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would impose incompatible standards of conduct upon Trans Union.

18. Class certification is appropriate under Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure, in that the prosecution of separate actions by individual members of the Class would create a risk that the adjudication of individual Class members' claims would, as a practical matter, be dispositive of the interests of other Class members who were not parties to such adjudications, or would substantially impair or impede the ability of non-party Class members to protect their own interests. Trans Union's net worth is publicly reported to be approximately $176,000,000. Taking into account the number of Class members, the number of violations, and the range of statutory damages for each violation, the amount in controversy exceeds Trans Union's net worth. Thus, class certification is appropriate under the "limited fund" provisions of Rule 23(b)(1)(B).

19. Class certification is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure, in that Trans Union has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

20. Class certification is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure, in that the issues of law and fact that are common to the Class as a whole predominate

over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy. The primary questions pertinent to the liability of Trans Union are questions common to the Class as a whole: whether the lists sold by Trans Union to target marketers constituted "consumer reports" as defined by FCRA § 603(d); whether Trans Union had reason to believe that the target marketers intended to use the information solely for purposes permitted by FCRA § 604(a)(3); whether Trans Union in fact had actual knowledge that the target marketers intended to use the information for purposes other than those permitted by FCRA § 604(a)(3); and whether Trans Union wilfully violated FCRA §§ 604 and 607. These common questions predominate over any questions affecting only individual members of the Class. Because Trans Union has sold confidential information without the knowledge of the Class members affected, individual Class members are largely unable to pursue their claims through separate, individual suits. Even if they were able to do so, the potential for recovery would be outweighed by the high cost of litigation.

## VI. BACKGROUND

21. Trans Union is a CRA as defined by FCRA § 603(f), 15 U.S.C. § 1681(a).

22. The Act governs all CRAs and is intended "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." FCRA § 602(a)(4), 15 U.S.C. § 1681.

23. FCRA § 603(d) defines a consumer report as the communication of any information by a consumer reporting agency such as Trans Union bearing on "a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living." 15 U.S.C. § 1681(a).

24. FCRA § 604 limits the circumstances under which a CRA may disclose a "consumer report." 15 U.S.C. § 1681(b). Section 604 permits CRAs to "furnish a consumer report under" specifically enumerated "circumstances and no other." *Id.* at § 604, 15 U.S.C. § 1681(b).

25. FCRA § 607 also requires CRAs to maintain reasonable procedures to ensure that CRAs only furnish consumer reports for the purposes set forth in § 604. *See* 15 U.S.C. § 1681(e).

26. Pursuant to § 604 thereof, the FCRA does not permit the transfer of consumer reports to help third parties market products to targeted individuals.

27. Section 604 allows a CRA to furnish consumer reports only to a person that the CRA believes will use it for the following "permissible purposes": (1) the extension of credit; § 604(a)(3)(A); (2) employment purposes § 604(a)(3)(B); (3) underwriting of insurance § 604(a)(3)(C); (4) determination of license eligibility § 604(a)(3)(D); (5) risk assessment for an existing credit obligation § 604(a)(3)(E); and (6) legitimate business need for the information in connection with a transaction initiated by the consumer.

28. The legislative history of the FCRA establishes that the omission of target marketing from the list of permissible purposes under § 604 was no accident. In introducing his version of the statute, Senator Proxmire, the author of the FCRA, stated:

> Credit reporting agencies would furnish information on individuals only to persons with a legitimate business need for the information . . . . This would preclude the furnishing of information . . . to market research firms or to other business firms who are simply on fishing expeditions.

115 Cong. Rec. 2415 (Jan. 31, 1969).

29. Regarding remedies for violations of the FCRA, Title 15, Section 1681n, provides, in part that:

CLE - 595553.3

—7—

[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to that consumer is liable to that consumer in an amount equal to the sum of—

(1)(A) any actual damages sustained by the consumer as a result of the failure or damages not less than $100 and not more than $1000; or

(B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or damages not less than $100 and not more than $1000, whichever is greater;

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys fees as determined by the court.

30. Similarly, Title 15, Section 1681o provides, in part, the following:

[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

(1) any actual damages sustained by the consumer as a result of the failure;

(2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorneys fees as determined by the court.

31. Trans Union is, and has been, regularly engaged in the practice of procuring and assembling information on consumers for the purpose of furnishing consumer reports to subscribers for monetary fees.

32. Through its target marketing business, Trans Union deliberately seeks out and sells consumer reports to target marketers that Trans Union knows, or should know, will not use the consumer report for a permissible purpose. Target marketing is, *inter alia*, the collection and analysis of information relating to consumers that permits marketers to make sales pitches to selected individuals. Target marketing permits a vendor of lists like Trans Union to identify from a large list a selected set of individuals who meet certain criteria.

33. Trans Union intentionally advertises and sells confidential consumer reports to target marketers to enable these target marketers can to this personal information for illegal purposes, including the sale of products and services that are unrelated to any permissible purpose.

34. Trans Union has created and maintains a consumer reporting database named CRONUS for use in its credit reporting business. CRONUS contains information on more than 140 million people and more than 100 million households. The database includes reports by credit grantors, collection agencies, governmental agencies and utilities, as well as information obtained from public records. Trans Union updates the CRONUS Master File three times per year.

35. CRONUS also compiles identifying information on consumers from multiple files, assigns the information to a new or existing file on the consumer, and adds credit-related information to the file. The account number and credit information appended to this number is called either a "tradeline" or a public record set.

36. On each credit recipient's record, a tradeline is identified in CRONUS by the name of the credit grantor and the account number; it reveals credit limits, payment patterns, payment history, and the present status of the account, i.e., the balance owing and any amount past due.

37. Trans Union's credit reports also include demographic information (name, age, address, social security number, etc.), tradeline information, public record information, and inquiries. The demographic information extracted from CRONUS reveals: (a) the consumer's name, address, social security number, date of birth and telephone number (the "standard segment"); (b) whether the consumer is the head of household, his or her ethnic background and marital status (the "household segment"); and (c) the consumer's occupation (the "employment segment").

38. While the Master File contains basic names, addresses and other demographic information, it also is frequently enhanced with the addition of other personal, often credit-related,

information on each individual. This enhancement enables Trans Union to offer its target marketing customers the opportunity to select, from the more than 140 million consumer files in the Master File, names and addresses of a smaller set of consumers who meet certain criteria specified by the target marketing customer. The criteria Trans Union uses to create these subsets are called "indicators" or "selects," and Trans Union generates half of them from its consumer reporting database CRONUS.

39. The target marketers who purchase information from Trans Union use the Master File/Selects product in two ways. Some target marketers provide a list of consumers to Trans Union and purchase selected Master File information regarding those consumers. Other target marketers request that Trans Union extract from the Master File names and addresses of those consumers who satisfy criteria selected by the marketer. Trans Union's target marketing customers can choose from a menu of "selects" and ask for a tailored list of consumers' names and addresses.

40. Trans Union sells these lists for one-time use by its customers either by rental or by license and charges a "base price" per thousand names, with additional charges per thousand based on the selects the customer has chosen.

41. For example, the "Upscale Retail" segment of the base list, which names 36.2 million consumers, is described in a Trans Union marketing brochure as offering:

> direct marketers the opportunity to reach America's retail shopping elite. The Upscale file has been developed from TransMark's list of retailers that cater to consumers with discriminating taste. These individuals have **_high discretionary income and are used to paying more than the average consumer_** to purchase quality products

42. A target marketer purchasing a segment can further refine the list by choosing "selects," or additional criteria to select certain characteristics of the consumers on the list. Examples of the "selects" offered by Trans Union are: bankcard or retailer; "hotline" consumers;

age; estimated household income; children; working women; length of residence; zip code; and persons who have responded to mail order solicitations. Trans Union also offers other target marketing lists from more specific databases.

43. Trans Union has intentionally, knowingly, and/or negligently violated the FCRA by, among other things: 1) transferring target marketing lists that contain information that bears on the factors set forth in Section 603(d)(l) and is used or expected to be used as a factor in determining a consumer's eligibility for credit; 2) transferring these lists to target marketers without a permissible purpose, including lists or information generated by Trans Union's Master File/Selects process, its proprietary models, the TransLink/reverse append products; 3) disclosing the existence of trade lines to target marketers; and 4) disclosing other information, such as the existence of a type of tradeline, open date of tradeline, home equity information, and income estimations to target marketers.

44. Furthermore, Trans Union has used its special position as a CRA to profit from its unlawful activity. As a CRA, Trans Union has access to a vast array of very current and detailed consumer information from its credit reporting business, which affords it a distinct advantage as a target marketer. Trans Union takes consumer information from CRONUS to create two primary databases called the Master File and the Standard Characteristics database.

45. Trans Union's use of CRONUS information in its target marketing business creates a competitive advantage because CRONUS information is far richer and more detailed than the data collected and used by non-CRA competitors who sell target marketing lists.

### VII. THE FTC FINDS THAT TRANS UNION HAS VIOLATED THE FCRA

46. On December 15, 1992, the FTC filed an administrative complaint alleging, in pertinent part, that Trans Union violated §§ 604 and 607(a) of the FCRA by

> compil[ing], for sale to clients, lists of consumers, based in whole or in part on information contained in its consumer reporting database bearing on the

characteristics enumerated in Section 603, thereby creating consumer reports, and provid[ing] such consumer reports in the form of target marketing lists to persons that do not intend to make a firm offer of credit to all those consumers on the list and who intend to use the information for purposes not authorized under [the FCRA].

*In re Trans Union Corporation*, 116 F.T.C. 1334, 1336 (1993).

47. On September 20, 1993, Administrative Law Judge ("ALJ") Parker entered a summary decision in favor of Complaint Counsel and against Trans Union. The FTC upheld that decision, ruling specifically that Trans Union's target marketing lists were "consumer reports" because the minimum criteria for a consumer file appearing on any of the target marketing lists - - that the consumer had at least two open credit accounts - - satisfied the definition of "consumer report" under FCRA § 603(d). *In re Trans Union Corporation*, 118 F.T.C. 821, 869-70 (1994).

48. The FTC determined that the mere existence of two credit accounts, or "tradelines," constituted information "collected in whole or in part by [Trans Union] with the expectation that it would be used by credit grantors for the purpose of serving as a factor in establishing the consumer's eligibility [for credit]." *Id.* at 861.

49. The FTC also held that target marketing is not a permissible purpose under the FCRA. Therefore, according to the FTC, Trans Union violated the FCRA by disclosing consumer reports to persons lacking any of the required permissible purposes.

50. In ruling on Trans Union's appeal of the FTC's decision, the United States Court of Appeals for the District of Columbia Circuit agreed that target marketing was not a permissible purpose under the Act. *Trans Union Corp. v. F.T.C.*, 81 F.3d 228 (D.C. Cir. 1996). The Court also held, however, that it was inappropriate for the FTC to use summary procedures to decide whether Trans Union's target marketing lists were consumer reports because the question presented a genuine issue of material fact. Consequently, the Court remanded the case to the FTC to resolve two primary

questions: 1) whether there is sufficient evidence to support the finding that Trans Union's target marketing lists are consumer reports; and 2) whether the FCRA passes constitutional muster.

51. On July 31, 1998, Administrative Law Judge James Timony issued an Initial Decision and Order on remand holding that Complaint Counsel provided sufficient evidence to show that Trans Union's lists are "consumer reports" under the Act and that Trans Union disclosed them to entities which lacked a permissible purpose. Trans Union's disclosure violated FCRA §§ 604 and 607(a). Judge Timony also held that the FCRA, as applied to Trans Union's practices, is constitutional. Trans Union appealed both rulings.

52. On February 10, 2000, after reviewing the full record in this case, including the extensive arguments of the parties, the FTC adopted the ALJ's July 1998 findings and conclusions. The FTC specifically found that:

> Trans Union's target marketing lists are indeed consumer reports under the FCRA because they contain information that bears on the factors set forth in Section 603(d)(1) and is used or expected to be used as a factor in determining a consumer's eligibility for credit. By selling these lists to target marketers without a permissible purpose, Trans Union violates the FCRA. This conclusion applies to Trans Union's Master File/Selects; proprietary models; and TransLink/reverse append products.
>
> Trans Union's disclosure to target marketers of information on the existence of a tradeline violates the FCRA. Further, Trans Union's disclosure in its target marketing products of other information, such as the existence of a type of tradeline, open date of tradeline, home equity information, and income estimations, among other list criteria described above, also violates the Act.

53. On information and belief, Trans Union continues its unlawful conduct.

## VIII. <u>COUNT I</u>

54. Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1- 53 above.

55. FCRA §§ 604 and 607 prohibit any CRA from transferring consumer reports any person unless that person intends to use such reports for the enumerated permissible purposes.

56. Trans Union has violated the FCRA by unlawfully transferring the consumer reports of the Plaintiffs and the Class members to persons intending to use the information therein for purposes other than those permitted by §§ 604 and 607. Trans Union knew at or before the time of each transfer, that the persons to whom it transferred these consumer reports did not intend to use these reports for permissible purposes.

57. Trans Union, at or before the time of each transfer, did not have reason to believe that the persons to whom it transferred these consumer reports intended to use these reports for permissible purposes.

58. Trans Union has willfully, knowingly, and/or negligently violated, continues to violate and will continue to violate FCRA §§ 604 and 607 by its conduct described herein.

59. Trans Union has willfully and knowingly acted in conscious disregard for the rights of the Plaintiffs and Class members.

60. Plaintiffs and Class members have suffered damages in an amount to be proven at trial caused directly and proximately by Trans Union's violations of the Act.

WHEREFORE, Plaintiffs request that the Court enter judgment in their favor and in favor of the Class and against Trans Union as follows:

(a) A declaration that Trans Union's policy and practice of transferring consumer reports to persons for purposes not permitted by §§ 604 and 607 is unlawful;

(b) A declaration that this is a proper class action pursuant to Fed. R. Civ. P. 23;

(c) Enjoining Trans Union from transferring the Plaintiffs' consumer reports and the consumer reports of all others to persons through the practices described in this Complaint;

(d) Statutory damages under 15 U.S.C § 1681n and/or 15 U.S.C. § 1681o in an amount to be proven at trial;

(e) An Order that Trans Union disgorge any profits derived through the acts described in this Complaint and to pay restitution to Plaintiffs in the amount of such profits;

(f) Punitive damages in an amount to be proven at trial;

(g) Attorneys fees, litigation expenses and costs;

(h) Pre-judgment and post-judgment interest;

(i) Such other or further relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiffs demand trial by jury on all issues so triable.

Respectfully submitted,

David B. Kahn, Esq.
Mark E. King, Esq.
Elissa C. Chase, Esq.
DAVID B. KAHN & ASSOCIATES, LTD.

*/s/ Mark King*

One Northfield Plaza
Suite 100
Northfield, Illinois 60093
(847) 501-5083

OF COUNSEL:

Alan S. Kopit (#390031965)
Randy J. Hart (#390040408)
Mark D. Griffin (#390064141)
HAHN LOESER & PARKS LLP
3300 BP Tower
200 Public Square
Cleveland, Ohio 44114-2301
(216) 621-0150

Robert D. Gary (#390019610)
Thomas A. Downie (#390033119)
GARY, NAEGLE & THEADO
446 Broadway Avenue
Lorain, Ohio 44052
(440) 244-4809

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Heather Payne, Geri Mann, Cynthia Alberts

**DEFENDANTS**

Trans Union Corporation

DOCKETED
JUN 02 2000

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

See Attached

**ATTORNEYS (IF KNOWN)**

00C 3292

JUDGE HOLDERMAN
MAGISTRATE JUDGE BOBRICK

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury – Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | ☐ 650 Airline Regs. | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **HABEAS CORPUS:** ☐ 530 General | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☒ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act | |
| | | ☐ 555 Prison Condition | ☐ 871 IRS – Third Party 26 USC 7609 | |

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

15 U.S.C. Sect. 1681, et. seq. This is a class action on behalf of persons whose credit information was transferred in violation of the Fair Credit Reporting Act

**REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A CLASS ACTION ☒ UNDER F.R.C.P. 23
DEMAND $ 
CHECK YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

**II.** This case ☒ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____, previously dismissed by Judge _____

DATE 5-31-2000

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

## **ATTACHMENT**

Plaintiff's Attorneys:

David B. Kahn
Mark E. King
Elissa C. Chase
David B. Kahn & Associates, Ltd.
One Northfield Plaza, Suite 100
Northfield, Illinois 60093
(847) 501-5083


Alan S. Kopit
Randy J. Hart
Mark D. Griffin
Hahn Loeser & Parks LLP
3300 BP Tower
200 Public Square
Cleveland, Ohio 44114-2301
(216) 621-0150

Robert D. Gary
Thomas A. Downie
Gary, Naegle & Theado
446 Broadway Avenue
Lorain, Ohio 44052
(440) 244-4809

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

**00C 3292**

In the Matter of

HEATHER PAYNE, et al.
                Plaintiffs,

vs.

TRANS UNION CORPORATION,
                Defendants.

DOCKETED JUN 02 2000

Case Number:

JUDGE HOLDERMAN

MAGISTRATE JUDGE SCHENKIER

FILED 00 MAY 31 PM 2:15 CLERK U.S. DISTRICT

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Heather Payne, Geri Mann and Cynthia Alberts

---

| (A) | (B) |
|---|---|
| SIGNATURE: *[signed]* David B. Kahn | SIGNATURE: *[signed]* Mark E. King |
| NAME: David B. Kahn | NAME: Mark E. King |
| FIRM: David B. Kahn & Associates, Ltd. | FIRM: David B. Kahn & Associates, Ltd. |
| STREET ADDRESS: One Northfield Plaza, Suite 100 | STREET ADDRESS: One Northfield Plaza, Suite 100 |
| CITY/STATE/ZIP: Northfield, IL 60093 | CITY/STATE/ZIP: Northfield, IL 60093 |
| TELEPHONE NUMBER: (847) 501-5083 | TELEPHONE NUMBER: (847) 501-5083 |
| IDENTIFICATION NUMBER: 1381628 | IDENTIFICATION NUMBER: 6190091 |
| MEMBER OF TRIAL BAR? YES [X] NO [ ] | MEMBER OF TRIAL BAR? YES [X] NO [ ] |
| TRIAL ATTORNEY? YES [ ] NO [X] | TRIAL ATTORNEY? YES [ ] NO [X] |
|  | DESIGNATED AS LOCAL COUNSEL? YES [X] NO [ ] |

| (C) | (D) |
|---|---|
| SIGNATURE: *[signed]* Elissa Chase | SIGNATURE: |
| NAME: Elissa C. Chase | NAME: |
| FIRM: David B. Kahn & Associates, Inc. | FIRM: |
| STREET ADDRESS: One Northfield Plaza, Suite 100 | STREET ADDRESS: |
| CITY/STATE/ZIP: Northfield, IL 60093 | CITY/STATE/ZIP: |
| TELEPHONE NUMBER: (847) 501-5083 | TELEPHONE NUMBER: |
| IDENTIFICATION NUMBER: 6236840 | IDENTIFICATION NUMBER: |
| MEMBER OF TRIAL BAR? YES [ ] NO [X] | MEMBER OF TRIAL BAR? YES [ ] NO [ ] |
| TRIAL ATTORNEY? YES [ ] NO [X] | TRIAL ATTORNEY? YES [ ] NO [ ] |
| DESIGNATED AS LOCAL COUNSEL? YES [ ] NO [X] | DESIGNATED AS LOCAL COUNSEL? YES [ ] NO [ ] |